IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| DAVE D. PROBERT, an individual; and JACKLYN O. PROBERT, an individual;<br><br>Plaintiffs,<br>v.<br><br>THE CLOROX COMPANY, a California company;<br><br>Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 1:07cv139<br><br>District Judge Dee Benson<br><br>Magistrate Judge Paul M. Warner |

This matter was referred to Magistrate Judge Paul M. Warner by District Judge Dee Benson pursuant to 28 U.S.C. § 636(b)(1)(A).[1] Before the court are the following motions: (1) the Clorox Company's ("Defendant") motion for leave to file a first amended answer and counterclaim;[2] (2) Defendant's motion to compel the deposition of Todd E. Zenger,[3] counsel for Dave D. Probert and Jacklyn O. Probert (collectively, "Plaintiffs"), and Plaintiffs' cross-motion for a protective order;[4] (3) Plaintiffs' motion to compel production of licensing information from Defendant;[5] and (4) Defendant's motion for sanctions pursuant to rule 11 of the Federal Rules of

---

[1] *See* docket no. 16.

[2] *See* docket no. 14.

[3] *See* docket no. 15.

[4] *See* docket no. 25.

[5] *See* docket no. 29.

Civil Procedure.[6]  A hearing on the motions was held on March 4, 2009.  Todd E. Zenger appeared on behalf of Plaintiffs, and Larry R. Laycock and Clinton E. Duke appeared on behalf of Defendant.  Before the hearing, the court carefully considered the motions, memoranda, and other materials submitted by the parties.  At the hearing, the court took the motions under advisement and, upon request by counsel, allowed both parties to submit additional briefing.  After considering the arguments of counsel and the additional briefing submitted by the parties after the hearing, the court now issues the following memorandum decision and order.

## BACKGROUND

Plaintiffs are the inventors and owners of U.S. Patent No. 6,387,384 (the "'384 Patent") issued on May 14, 2002.  The '384 Patent claims sprays, wipes, and bandages that contain sodium hypochlorite in a percentage weight from about 0.002% to about 0.2%.  Plaintiffs filed a complaint which alleges that the manufacture and sale of Defendant's disinfecting products, and in particular Defendant's Clorox Anywhere spray, constitutes infringement of at least one of the asserted claims of the '384 Patent.

In response to Plaintiffs' complaint, Defendant filed an answer and counterclaim.  Defendant contends that its disinfecting products do not infringe on any valid claim of the '384 Patent and that the '384 Patent is invalid as obvious in view of the prior art pursuant to 35 U.S.C. §§ 102 and/or 103.

---

[6] *See* docket no. 20.

**I. Defendant's Motion for Leave to File an Amended Answer and Counterclaim**

Defendant moves the court for leave to file an amended answer and counterclaim to add a fourth counterclaim for inequitable conduct. Rule 15 of the Federal Rules of Civil Procedure governs the amendment of pleadings and provides, in relevant part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Because Plaintiffs have not given written consent, Defendant filed the instant motion.

"The purpose of the Rule is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Minter v. Prime Equip. Co.*, 251 F.3d 1196, 1204 (10th Cir. 2006) (quotations and citation omitted). In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court set forth various grounds upon which a court could deny a motion to amend a pleading:

> In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be "freely given."

*Id.* at 182 (quoting previous version of Fed. R. Civ. P. 15).

Plaintiffs argue that Defendant's motion should be denied because Defendant has failed to comply with the deadline set forth in the scheduling order and has unduly delayed in seeking to amend its counterclaim. Plaintiffs also assert that allowing Defendant to amend its counterclaim would be futile. The court will address both of these arguments.

### A. Undue Delay

Plaintiffs contend that Defendant unduly delayed in seeking to amend its counterclaim because it did not file the motion until well after the deadline for doing so had passed. Specifically, Plaintiffs assert that because Defendant received Plaintiffs' document production prior to the July 18, 2008 deadline for amending pleadings in the scheduling order, Defendant could have brought the instant motion in a timely manner. While Defendant acknowledges that the deadline for amending pleadings passed on July 18, 2008, it asserts that it did not discover the full extent of the inequitable conduct until after deposing Plaintiffs on October 7 and 8, 2008. Defendant also contends that because it filed the instant motion three business days after receiving the deposition transcripts upon which its proposed counterclaim is based, it brought the motion as soon as practicable. Defendant further asserts that it did not have enough evidence to adequately support an inequitable conduct counterclaim until after deposing Plaintiffs.

Although "undue delay" may justify denying a motion for leave to amend, "[e]mphasis is on the adjective: 'Lateness does not of itself justify the denial of the amendment.'" *Minter*, 451 F.3d at 1205 (quoting *R.E.B., Inc. v. Ralston Pruina Co.*, 525 F.2d 749, 751 (10th Cir. 1975)). Rather, the Tenth Circuit, "focuses primarily on the reasons for the delay." *Id.* at 1206. "'[W]hen the party filing the motion has no adequate explanation for the delay,'" it may be appropriate to deny leave to amend. *Id.* (quoting *Frank v. U.S. West*, 3 F.3d 1357, 1365-66 (10th Cir. 1993)).

The court concludes that Defendant has provided an adequate explanation for the delay. As noted by Plaintiffs, unsupported charges of inequitable conduct are disfavored by the Federal

Circuit.  *See Burlington Indust. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988).  Thus, while Defendant admits that it had suspicions about inequitable conduct upon receipt of Plaintiffs' document production, rather than filing its motion for leave to amend at that time, it appropriately waited until after taking Plaintiffs' depositions.  As such, the court concludes that Defendant did not unduly delay in seeking to amend its counterclaim.

### B.  Futility

Plaintiffs argue that granting Defendant leave to amend would be futile because Defendant's assertions of fact are insufficient to support an inequitable conduct counterclaim.  In response, Defendant contends that its proposed counterclaim is not futile because Defendant has pleaded it with particularity and has provided adequate evidentiary support.

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1199 (10th Cir. 2006) (quotations and citation omitted).  In determining whether Defendant's counterclaim would be subject to dismissal, the court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to Defendant.  *See Kt & G Corp. v. Att'y Gen. of Okla.*, 535 F.3d 1114, 1133-34 (10th Cir. 2008).  In addition, the "court must look for plausibility in the [counterclaim].  Under this standard, a [counterclaim] must include enough facts to state a claim to relief that is plausible on its face." *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007).

To state a counterclaim for inequitable conduct, Defendant must assert that with the intention to deceive, Plaintiffs affirmatively misrepresented a material fact, failed to disclose material information, or submitted false material information to the United States Patent and

5

Trademark Office (the "PTO").  *See Baxter Intern., Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1327 (Fed. Cir. 1998) ("Inequitable conduct includes affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive.").  However, "inequitable conduct, while a broader concept than fraud, must be pled with particularity" as provided by rule 9(b) of the Federal Rules of Civil Procedure. *Central Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007) (quotations and citation omitted).  The Tenth Circuit requires that a party alleging fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quotations and citation omitted).

In the proposed counterclaim, Defendant asserts that four material items were withheld from the PTO with the intent to deceive or mislead the examiner.  First, Defendant contends that Mr. Probert testified that one of the preferred embodiments of his claimed invention was found in "readings" that neither he nor Mr. Zenger disclosed to the PTO during the prosecution of the '384 Patent.  Second, Defendant asserts that Mr. Probert and Mr. Zenger were aware of certain, nonconfidential disclosures of Mr. Probert's product ideas and inventions made by Mr. Probert to several companies, including Becton Dickinson Technologies, which may have compromised the patent rights claimed in the '384 Patent.  Again, Defendant argues, neither Mr. Probert nor Mr. Zenger disclosed these disclosures to the PTO during the prosecution of the '384 Patent.  Third, Defendants contend that Mrs. Probert testified that a declaration regarding the identities of the inventors signed by Mr. Probert and submitted to the PTO by Mr. Zenger was false.  Finally,

Defendant asserts that Mr. Probert testified that he worked with a man (the "unknown man") who is probably dead now but who performed certain tests, in a laboratory that no longer exists, relating to the invention claimed in the '384 Patent.  Mr. Probert, however, could not remember the name of the unknown man or the name of the laboratory.  Defendant explains that although this man did not want to be identified, he formulated the compositions listed as examples in the '384 Patent but was not listed as an inventor in declarations made to the PTO.

     The court concludes that Defendant has alleged its inequitable conduct counterclaim with the requisite particularity pursuant to rule 9(b).  *See* Fed. R. Civ. P. 9(b).  In the proposed counterclaim, Defendant has sufficiently identified the alleged inequitable conduct, the actors who committed the alleged inequitable conduct, and the time frame in which the alleged inequitable conduct occurred.  Although Plaintiffs argue that each asserted basis for Defendant's inequitable conduct counterclaim lacks material evidence in support, Defendant is not required to meet its full burden of proof at the pleading stage.  Indeed, it will be Defendant's burden to prove by clear and convincing evidence the elements of materiality and intent to deceive required for a successful inequitable conduct counterclaim.  *See Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006) ("The party asserting inequitable conduct must prove a threshold level of materiality and intent by clear and convincing evidence.").  However, with respect to the legal sufficiency of the pleadings, accepting as true Defendant's allegations of inequitable conduct and construing them in a light most favorable to Defendant, the court concludes that Defendant has adequately stated a claim for inequitable conduct.

Furthermore, as raised by the court at the March 4, 2009 hearing, judicial economy considerations warrant allowing Defendant to amend its counterclaim. It would be an inefficient use of resources to deny the motion and force Defendant to file a separate declaratory judgment action for inequitable conduct, which would likely be the result if the motion was denied.

Accordingly, based on the foregoing, Defendant's motion for leave to amend the answer and counterclaim is **GRANTED**. Within ten days of the date of this order, Defendant shall file an amended answer and counterclaim.

## II. Defendant's Motion to Compel the Deposition of Todd E. Zenger and Plaintiffs' Cross-Motion for a Protective Order

Defendant moves the court to compel the deposition of Plaintiffs' counsel, Mr. Zenger. Defendant states that Mr. Zenger was identified in Plaintiffs' initial disclosures as an individual likely to have discoverable information because he was the prosecuting attorney for the '384 Patent. Defendant explains that on several occasions, counsel informed Mr. Zenger that Defendant would seek to depose him because of his role in the prosecution of the '384 Patent. Defendant also contends that at their depositions, Plaintiffs were unable to remember key facts regarding (1) the invention, prosecution, and interpretation of the '384 Patent; and (2) disclosures of the claimed invention to third parties. Defendant also asserts that Plaintiffs testified that Mr. Zenger is the only other person who has this relevant, nonprivileged information and that this information is crucial to the preparation of Defendant's case. Therefore, Defendant concludes, this court should compel the deposition of Mr. Zenger.

In response to Defendant's motion, Plaintiffs filed a cross-motion for a protective order to prevent the deposition of Mr. Zenger. Plaintiffs argue that Defendant's motion is an attempt to remedy its own failed and incomplete discovery available from other sources. Specifically, Plaintiffs assert that Defendant failed to ask questions of Mr. Probert that Defendant now wishes to ask trial counsel in deposition. Plaintiffs also contend that Defendant failed to seek discovery from available third parties and that the information Defendant seeks is available from its own technical and expert witnesses. Finally, Plaintiffs argue that Defendant seeks to invade the attorney-client and/or attorney work-product privilege.

A party may obtain discovery of any nonprivileged matter that is relevant to a claim or defense of any party. *See* Fed. R. Civ. P. 26(b)(1). However, a court may limit discovery "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" including that the discovery not be had or that it be had only by a method other than that selected by the party seeking discovery. Fed. R. Civ. P. 26(c).

In general, "[t]he practice of forcing trial counsel to testify as a witness . . . has long been discouraged" and "should be employed only in limited circumstances." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). In order to depose Mr. Zenger, Defendant must satisfy the three-part test set forth in *Shelton v. American Motors Corporation. See Boughton v. Cotter Corp.*, 65 F.3d 823, 830 (10th Cir. 1995) (adopting the *Shelton* test); *see also Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1112 n.15 (10th Cir. 2001) ("*Shelton* was adopted by this court in *Boughton*."). Under *Shelton*, Defendant must demonstrate that "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information

9

sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Boughton*, 65 F.3d at 829. Defendant seeks the following information from Mr. Zenger: (1) the invention, prosecution, and interpretation of the '384 Patent; and (2) disclosures of the claimed invention to third parties. The court will now address whether Defendant has satisfied the *Shelton* test with regard to the information it seeks.

### A. Invention, Prosecution, and Interpretation

While the information Defendant seeks regarding the invention, prosecution, and interpretation of the '384 Patent can only be discovered through deposing Mr. Zenger and is crucial to Defendant's case, Defendant has failed to demonstrate that the information is not protected by the attorney-client privilege.[7] Defendant asserts that communications concerning technical information between Mr. Zenger and Plaintiffs are not privileged, and it cites a case out of the Northern District of California to support this assertion. *See Hewlett-Packard v. Bausch & Lomb*, 116 F.R.D. 533, 542 (N.D. Cal. 1987) ("A communication that consists largely of technical information that an agent of a client provides to the client's representative before the PTO so that that representative can pass along the technical information to the PTO generally is not covered by the attorney-client privilege."). However, that case was reversed by *Advanced Cardiovascular Systems, Inc. v. C.R. Bard, Inc.*, 144 F.R.D. 372, 378 (N.D. Cal. 1992). Magistrate Judge Brazil authored both the *Hewlett-Packard* and *Advanced Cardiovascular*

---

[7] While Plaintiffs assert that the work-product privilege also applies, the court is not persuaded that it does. The "work product privilege only extends to documents prepared by an attorney for the client in anticipation of litigation." *Grand Jury Proceedings v. U.S.*, 156 F.3d 1038, 1042 (10th Cir. 1998). A patent application is not prepared "in anticipation of litigation." *Id.*

10

opinions.  *See id.* at 372; *Hewlett-Packard*, 116 F.R.D. at 533.  In *Advanced Cardiovascular*, Judge Brazil reversed himself and repudiated his earlier analysis of the attorney-client privilege in *Hewlett-Packard*.  *See Advanced Cardiovascular*, 144 F.R.D. at 374.  Judge Brazil stated that his *Hewlett-Packard* opinion "reflected no awareness that there was then, and remains today, a clear division of authority on this important issue" of attorney-client privilege in patent cases.  *Id.*

This division of authority is exemplified by *Jack Winter, Inc. v. Koratron Co.*, 54 F.R.D. 44 (N.D. Cal. 1971), and *Knogo Corp. v. United States*, 213 U.S. P.Q. 936 (Ct. Cl. 1980).  The *Jack Winter* line of cases essentially hold that the attorney-client privilege does not protect communications between inventors and their lawyers when the communications primarily consist of technical information that counsel need to prepare and prosecute a patent application.  *See Jack Winter*, 54 F.R.D. at 46-47 ("As we view it, the attorney exercises no discretion as to what portion of this [technical] information must be relayed to the [PTO] . . . and hence with respect to such material he acts as a conduit between his client and the [PTO]."); *see also McNeil-PPC, Inc. v. Procter & Gamble Co.*, 136 F.R.D. 666, 669-70 (D. Colo. 1991); *Howes v. Med. Components, Inc.*, 7 U.S.P.Q.2d 1511, 1512 (E.D. Pa. 1988); *Hercules Inc. v. Exxon Corp.*, 434 F. Supp. 136, 147-48 (D. Del. 1977).  The *Knogo* line of cases reject the "conduit theory" of *Jack Winter* and hold that the patent attorney is not a "mere conduit for either the client's communications containing the technical information or the technical information itself" because these "discussions between attorney and client enable the attorney to extract from this information one or more patentable inventions."  *Knogo Corp.*, 213 U.S.P.Q. at 940-41; *see also*

*Space Systems/Loral, Inc. v. Lockheed Martin Corp.*, 51 U.S.P.Q.2d 1063 (N.D. Cal. 1999); *Laitram Corp. v. Hewlett-Packard Co., Inc.*, 827 F. Supp. 1242 (E.D. La. 1993); *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 202 (E.D.N.Y. 1988).

After a thoughtful and thorough analysis of the reasoning behind *Jack Winter* and *Knogo*, Judge Brazil adopted *Knogo* and concluded that

> we do not believe that patent counsel usually serve as conduits, even of technical information.  Instead, we believe that inventors and their patent lawyers often engage in quite substantial private dialogue as part of the process of shaping and focusing a patent application, and that it is reasonable for them to expect that dialogue to remain confidential.
>
> Therefore, the communications from inventor to patent lawyer, even those that are entirely technical, remain presumptively protected by the attorney-client privilege.  We would consider ordering these communications disclosed only on a very compelling showing, e.g., that despite the presumption of confidentiality, the inventor in fact expected specific communications he or she made to patent counsel to be disclosed, without editing, to the PTO.

*Advanced Cardiovascular*, 144 F.R.D. at 378.

Neither party in the instant action informed the court of this division of authority on the scope of the attorney-client privilege in the patent prosecution process or the Federal Circuit's view on this issue.  At the time of *Advanced Cardiovascular*, the Federal Circuit had yet to rule on this issue.  But in *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800 (Fed. Cir. 2000), the Federal Circuit adopted the *Knogo* line of cases and rejected the *Jack Winter* line of cases.  *See id.* at 805-06.  In *Spalding*, the Federal Circuit held that Spalding's invention record was protected by the attorney-client privilege because it was "provided to an attorney 'for the

purpose of securing primarily legal opinion, or legal services, or assistance in a legal proceeding.'" *Id.* at 805 (quoting *Knogo Corp.*, 213 U.S.P.Q. at 940). The court also stated that

> to the extent that Spalding's invention record may contain technical information, or refer to the prior art, the inclusion of such information does not render the document discoverable, because requests for legal advice on patentability or legal services in preparing a patent application necessarily require the evaluation of technical information such as prior art.

*Id.*

The court is mindful that *Spalding* deals with an invention record while Defendant is seeking to depose Plaintiffs' patent counsel. While there are cases in which patent counsel's deposition is compelled even when patent counsel is also trial counsel, this court does not find them to be particularly persuasive. *See Plymouth Indus., LLC v. Sioux Steel Co.*, No. 8:05CV196, 2006 WL 695458, at *4 (D. Neb March 17, 2006); *Genal Strap v. Dar*, No. CV 2004-1691, 2006 WL 525794, at *3 (E.D.N.Y. March 3, 2006); *aaiPharma, Inc. v. Kremers Urban Dev. Co.*, 361 F. Supp. 2d 770, 777 (N.D. Ill. 2005); *Alcon Laboratories, Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340, 344-45 (S.D.N.Y 2002). While each of these cases was issued after the Federal Circuit's ruling in *Spalding*, none of them cite to it or address the Federal Circuit's analysis of the attorney-client privilege. In addition, the court in *Plymouth* purported to apply *Shelton* and concluded that each factor had been satisfied. *See Plymouth Indus.*, 2006 WL 695458, at *5. But it also relies upon the conduit theory for its limited discussion of attorney-client privilege. *See id.* at *4 ("Communications of technical information between client and attorney for the purpose of submission to the [PTO] are not privileged." (quotations and citations omitted)). Similarly, the court in *Genal Strap* relies upon the conduit theory and states that "'an

13

attorney cannot avoid a deposition by asserting that he or she has no relevant, nonprivileged information, . . . at a minimum, the attorney must submit to a deposition so that his lack of knowledge may be tested on any claimed privilege placed on the record.'" *Genal Strap*, 2006 WL 525794, at *3 (quoting *Alcon*, 225 F. Supp. 2d at 344). Furthermore, the court in *aaiPharma* declined to apply *Shelton* on the grounds that the party seeking to quash the deposition subpoena did not raise *Shelton* until its reply brief. *See aaiPharma*, 361 F. Supp. 2d at 774 ("For that reason alone, the Court declines to apply the strict standard of *Shelton* to the facts here."). The court allowed the deposition to go forward and concluded that "the best procedure is for [the plaintiff] to assert its privilege objections for each particular question or responsive document" rather than quash the entire subpoena. *Id.* at 777. The court in *Alcon Laboratories* also purports to apply *Shelton* but does not provide any analysis of the attorney-client privilege. *See Alcon Laboratories*, 225 F. Supp. 2d at 344. Instead, the court "reserve[s] decision on the disputed assertions of privilege until the privilege has been asserted at a deposition or on a privilege log, and the issue is then ripe for consideration." *Id.*

As stated above, the Tenth Circuit has adopted the *Shelton* factors for determining whether to allow the deposition of opposing counsel. *See Boughton*, 65 F.3d at 830. The court does not interpret *Shelton* or *Boughton* to allow a deposition of opposing counsel to go forward if the party seeking the deposition has failed to demonstrate that the attorney-client privilege is inapplicable. *See id.* ("[T]he trial court at least has the discretion under Rule 26(c) to issue a protective order against the deposition of opposing counsel when any one or more of the three *Shelton* criteria for deposition listed above are not met."). In this case, Defendant has failed to

14

demonstrate that the information it seeks regarding the invention, prosecution, and interpretation of the '384 Patent is not protected by the attorney-client privilege.  It appears that the information sought by Defendant could only have been conveyed to Mr. Zenger through communications from Plaintiffs.  Defendant has not demonstrated that the privilege has been waived or that the information it seeks was not a protected communication from client to attorney.  The court is unwilling to allow the deposition to go forward without a showing by Defendant that the information it seeks from Mr. Zenger is not protected by the attorney-client privilege.  That said, Defendant may renew its motion if it can demonstrate that the specific information it seeks is not privileged.

## B.  Disclosures to Third Parties

Defendant also seeks information regarding disclosures of the claimed invention to third parties.  While Defendant has demonstrated that the information sought is relevant and nonprivileged and that the information is crucial to the preparation of Defendant's case, Defendant has failed to demonstrate that Mr. Zenger is the only source of that information.  *See Boughton*, 65 F.3d at 829.  Defendant could have sought information regarding the disclosures from the third parties to which the disclosures were made but failed to do so.  Accordingly, Defendant has not satisfied all three *Shelton* factors as to the disclosures made to third parties.

Based on the foregoing, Defendant's motion to depose Mr. Zenger is **DENIED** and Plaintiffs' cross-motion for a protective order is **GRANTED**.  However, as previously noted, Defendant may renew its motion if it can demonstrate that the specific information it seeks regarding the invention, prosecution, and interpretation of the '384 Patent is not privileged.

### III.  Plaintiffs' Motion to Compel License Information from Defendant

Plaintiffs move this court for an order compelling Defendant to produce all of its licensing information without limitation because, Plaintiff argues, such information is highly relevant to the issue of reasonable royalty for patent damages.  Plaintiffs assert that Defendant is improperly withholding this information despite Plaintiffs' repeated requests for it.  Defendant responds that Plaintiffs are not entitled to discover all of its licenses, just those that would be comparable to the '384 Patent.  Defendant contends that it has completed an exhaustive search, going back as far as 2000, and that it does not possess any licenses directed to patents that would be comparable to the '384 Patent.

During written discovery, Plaintiffs requested that Defendant identify and produce documents relating to "all technology or patent license(s) entered into by [Defendant] relating to the licensing of disinfecting technologies and/or products."[8]  Plaintiffs also requested that Defendant produce a witness pursuant to Federal Rule of Civil Procedure 30(b)(6) to testify on the topic of "[l]icenses and/or purchases of wipe and/or spray technology from or by [Defendant] from third parties, including license agreements, royalties paid or received from [Defendant]."[9]

Defendant's rule 30(b)(6) designee, Mark Meyer, testified at his deposition that he had searched through Defendant's financial records and found no entries indicating any purchase or license of any disinfecting or sanitizing wipe or spray technology.  Mr. Meyer's initial search went back through 2006 because the allegedly infringing products were launched that year.  At

---

[8] Docket no. 30, exhibit 3.

[9] Docket no. 30, exhibit 11.

16

his deposition, counsel for Plaintiffs requested that Mr. Meyer conduct a second search of Defendant's records back to the year 2000. Mr. Meyer completed that search and again indicated that Defendant had not paid or received any kind of royalties or licenses for disinfecting technologies. Counsel for Plaintiffs then requested that Mr. Meyer search through the records again "before the year 2000 for any technology or patent license into which [Defendant] has entered for disinfectant technology."[10] Defendant refused this request and the deposition was concluded. Then, on December 9, 2008, counsel for Plaintiffs sent an e-mail to counsel for Defendant stating: "[Plaintiffs] again request discovery from [Defendant] as to technology licenses without limit as to wipes or sprays or particular time periods."[11] The following day, Plaintiffs filed the instant motion asking this court to order Defendant to produce "nonqualified licensing information."[12]

At the hearing on this motion, Defendant provided to the court a file of all of its licenses from 2003 to the present from its cleaning division for an in camera review. Also at the hearing, the court granted Plaintiffs' request for additional time to submit further briefing on the instant motion. Plaintiffs, however, failed to submit additional briefing in support of the instant motion.

While licensing information is relevant to Plaintiffs' asserted reasonable royalty damage, *see Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), it is not without limit. In *Georgia-Pacific*, the court set forth fifteen factors for courts to

---

[10] Docket no. 32, exhibit 12b

[11] Docket no. 30, exhibit 13.

[12] Docket no. 30.

consider in determining a reasonable royalty pursuant to 35 U.S.C. § 284.[13]  *See id.*; *see also* 35 U.S.C. § 284 ("Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.").  The second *Georgia-Pacific* factor states: "The rates paid by the licensee for the use of other patents comparable to the patent in suit." *Id.*  Thus, the court agrees with Defendant that only those licenses paid by Defendant for the use of patents "comparable to" the '384 Patent are discoverable.  *Id.*  Because the '384 Patent is directed to a particular concentration of sodium hypochlorite, a license that does not encompass disinfecting technology is not "comparable to" the '384 Patent.  *Id.*

The court has reviewed Defendant's license information in camera, which include licenses directed to the use of trademarks, product packaging, a mop system, a surfactant, and a binding polymer.  The court concludes that because none of these licenses encompass disinfecting technology, none are relevant or "comparable to" the '384 Patent.  *Id.*  Therefore, the court will not require Defendant to produce any of these licenses to Plaintiffs.  Furthermore, Defendant has indicated that it has completed an extensive search for licensing information encompassing disinfecting technology back to 2000.  Defendant asserts that it could not locate the information sought by Plaintiffs because it does not exist.

---

[13] The *Georgia-Pacific* factors have been recognized and utilized by the Federal Circuit on numerous occasions.  *See, e. g.*, *Unisplay S.A. v. American Elec. Sign Co.*, 69 F.3d 512, 517 n.7 (Fed. Cir.1995).

Based on the foregoing, the court concludes that there are no documents responsive to Plaintiffs' initial requests and that Defendants are not required to disclose those licenses reviewed by the court in camera because they are not "comparable to" the '384 Patent. *Id.* Accordingly, Plaintiffs' motion is **DENIED**.

### IV.  Defendant's Motion for Rule 11 Sanctions

At the hearing, the court indicated that it would postpone the adjudication of Defendant's motion for sanctions pursuant to rule 11 of the Federal Rule of Civil Procedure until after conferring with Judge Benson's chambers.  The court noted its concern because this motion is potentially dispositive, and this case was referred by Judge Benson to this court under 28 U.S.C. § 636(b)(1)(A).  *See* 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a).  After consulting with Judge Benson's chambers, the court has determined that the motion will be heard by Judge Benson.  Accordingly, Defendant's motion for rule 11 sanctions is no longer referred to the undersigned.

### CONCLUSION

In summary, **IT IS HEREBY ORDERED**:

(1)   Defendant's motion for leave to amend the answer and counterclaim[14] is **GRANTED**.  Within ten days of the date of this order, Defendant shall file an amended answer and counterclaim.

---

[14] *See* docket no. 14.

(2)     Defendant's motion to depose Mr. Zenger[15] is **DENIED**, and Plaintiffs' cross-motion for a protective order[16] is **GRANTED**.  However, Defendant may renew its motion if it can demonstrate that the specific information it seeks regarding the invention, prosecution, and interpretation of the '384 Patent is not privileged.

(3)     Plaintiffs' motion to compel license information from Defendant[17] is **DENIED**.

(4)     Defendant's motion for rule 11 sanctions[18] is no longer referred to the undersigned.

**IT IS SO ORDERED.**

DATED this 15th day of April, 2008.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

---

[15] *See* docket no. 15.

[16] *See* docket no. 25.

[17] *See* docket no. 29.

[18] *See* docket no. 20.